IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : No. 1:07-CR-0104 |
| | : |
| v. | : (Judge) |
| | : |
| OLLIE REAVES | : (Electronically Filed) |

**BRIEF IN SUPPORT OF A RESENTENCE HEARING UNDER SECTION 404 OF THE FIRST STEP ACT**

Date: April 5, 2019

Respectfully submitted,

*/s/ Frederick W. Ulrich*
FREDERICK W. ULRICH, ESQUIRE
Asst. Federal Public Defender
Attorney ID# PA44208
Tammy L. Taylor, Esquire
Staff Attorney
Attorney ID# PA73155

100 Chestnut Street, Suite 306
Harrisburg, PA 17101
Tel. No. 717-782-2237
Fax No. 717-782-3881
*Fritz_ulrich@fd.org*
*Tammy_taylor@fd.org*
*Attorneys for Ollie Reaves*

# TABLE OF CONTENTS

Table of Authorities ................................................................................ ii

I.    Introduction ............................................................................. 1

II.   Factual and Procedural Background......................................... 2

III.  Statement of the Question Involved ........................................ 4

IV.   Argument

    A. Mr. Reaves is eligible for relief under Section 404 of the First Step
    Act ....................................................................................... 5

    B. As Mr. Reaves' mandatory life term is no longer applicable, he is
    entitled to a resentencing hearing......................................... 9

      1. Section 404 contemplates a resentencing hearing........................... 9

      2. In cases like Mr. Reaves', the Third Cicuit and other courts have
      remanded for or held *de novo* resentencing hearings.................... 11

      3. Because Mr. Reaves never had sentencing when the court could
      consider an advisory guideline range and the factors under Section
      3553(a), a *de novo* hearing is necessary. ...................................... 13

      4. A sentencing hearing is also necessary so that Mr. Reaves can
      exercise his right to allocution...................................................... 15

V.    Conclusion ............................................................................ 17

Certification of Word Count ................................................................ 18

Certificate of Service ......................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Alleyne v. United States,*
 570 U.S. 99 (2013) ........................................................................5

*Apprendi v. New Jersey,*
 530 U.S. 433 (2000) ......................................................................5

*Dillon v. United States,*
 560 U.S. 817 (2010) ....................................................................10

*Dorsey v. United States,*
 567 U.s. 260 (2010) ......................................................................6

*Gall v. United States,*
 552 U.S. 38 (2007) ......................................................................13

*Green v. United States,*
 365 U.S. 301 (1961) ....................................................................15

*Pepper v. United States,*
 562 U.S. 4768 (2011) ..................................................................14

*United States v. Booker,*
 543 U.S. 2202 (2005) ..................................................................14

*United States v. Chapman,*
 915 F.3d 139 (3d Cir. 2019) .................................................... 15,16

*United States v. Cruz,*
 470 F. App'x 91 (3d Cir. 2012) ..................................................12

*United States v. Dixon,*
 648 F.3d 195 (3d Cir. 2011) .................................................. 6, 12

*United States v. Faulks,*
 201 F.3d 208 (3d Cir. 2000) ......................................................16

*United States v. Grier,*
 475 F. 3d 556 ( 3d Cir. 2017) ....................................................13

*United States v. Manuel,*
 426 F. App'x 47 (3d Cir. 2011) ................................................10

*United States v. Powell,*
 2019 WL 1198005 (N.D.N.Y. March 14, 2019) ............................ 5, 12

*United States v. Self,*
   681 F.3d 190 (3d Cir. 2012) ........................................................... 11, 12

*United States v. Spearman,*
   913 F. 3d 958 (9th Cir. 2019) ................................................................12

*United States v. Walker,*
   545 F. App'x 105 (3d Cir. 2013) ...........................................................12

*United States v. Ward,*
   732 F.3d 175 (3d Cir. 2013) ..................................................................15

## Statutes

18 U.S.C. § 924 ........................................................................................2

18 U.S.C. § 3553 ............................................................................. *passim*

18 U.S.C. § 3582 ...............................................................................11, 12

18 U.S.C. § 3661 ...................................................................................9, 11

21 U.S.C. § 841 ............................................................................... *passim*

21 U.S.C. § 851 ........................................................................................2

28 U.S.C. § 994 .......................................................................................11

## Rules

Fed. R. Crim. P. 32 ..................................................................................15

## Guideline Provisions

U.S. Sentencing Guidelines Manual § 1B1.10 (U.S. Sentencing Comm'n 2018) ..10

## I.   INTRODUCTION

Ollie Reaves seeks a new sentencing under the plain language of Section 404 of the First Step Act.  That language, among other things, entitles individuals like Mr. Reaves, who were convicted of a crack cocaine offense, to be resentenced to a reduced term.  The Government opposes a resentencing, taking the view, presumably, that Mr. Reaves had a sentencing hearing in 2009, and that any adjustment under Section 404's terms can be accomplished based on written submissions.  This position finds no support in the relevant statutes, and ignores both this Court's obligations when imposing a sentence and Mr. Reaves' rights at a sentencing.[1]

More important, however, Mr. Reaves never had a sentencing, at least as that right is commonly understood.  Instead, when the district court sentenced Mr. Reaves, the Guidelines and the factors in Section 3355(a) were irrelevant, as Congress had decided that the court had to impose a life term.  Now that Congress has rescinded that mandatory punishment and has given this Court the discretionary authority to revisit Mr. Reaves' sentence, he should correspondingly have a chance to address the court, present testimony, and argue those

---

[1] It also ignores the fact that the judge who sentenced Mr. Reaves, the Honorable William W. Caldwell, has since retired and a new judge would now have to balance the necessary sentencing considerations.

1

considerations and objections that are relevant under a now advisory guideline system and Section 3553(a).

## II.  FACTUAL AND PROCEDURAL BACKGROUND

In 2008, the grand jury charged Mr. Reaves in Count 1 with conspiring to distribute and possess with intent to distribute in excess of 50 grams of cocaine base (crack) in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(iii).  In Count 2, the grand jury charged him with possessing a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c).  The Government had filed an information under 21 U.S.C. § 851, listing two prior drug convictions in New York.  The first for an attempted sale of a controlled substance in the third degree that occurred when Mr. Reaves was 18 years old in 1994, and for which he was sentenced to 6 months imprisonment.  The second for an attempted sale of a controlled substance in 1996, and for which Mr. Reaves was sentenced to 3 years to 6 years imprisonment.  *See* (Doc. 169-2).

Mr. Reaves proceeded to a jury trial.  The jury returned a verdict of guilty on Count 1, specifically finding that the offense involved 50 grams or more of crack cocaine.  Count 2 was dismissed.

In a presentence report prepared for Mr. Reaves' original sentencing, he was determined to be responsible for 4.5 kilograms of crack cocaine and under Sections 2D1.1 of the 2008 edition of the Sentencing Guidelines, his base offense level was

2

38.  He also received a 4-level enhancement for his role in the offense and a 2-level enhancement for obstruction of justice.  Mr. Reaves objected to the guideline calculation.

Additionally, Mr. Reaves qualified for the career-offender enhancement under Seciton 4B1.1 of the Guidelines.  Because Mr. Reaves' statutory maximum term of imprisonment was life, under Section 4B1.1(b)(1), his base offense level was 37.  The offense level of 44 determined under Section 2D1.1 was greater and thus, applied; however, according to the Guidelines, an offense level higher than 44 is to be treated as a 43.  As a career offender, Mr. Reaves' criminal history category was increased from IV to VI.  A criminal history category of VI and a total offense level of 43 would have resulted in a term of life.

At sentencing Mr. Reaves objected to the weight of the drugs determined by the Probation Office, the leadership enhancement, and to the enhancement for obstruction of justice.[2]  With respect to the weight of the drugs, the Court found that the offense involved "in excess of one and a half kilograms" and later noted that the defense wanted to keep the weight below one half kilogram, but the Court "didn't make any findings how many drugs there were."  (N.T. Sent. 4, 9).  The Court sustained the objection to the enhancement for obstruction of justice and

---

[2] There was also a 2-level enhancement for use of firearms during commission of the offense to which Mr. Reaves objected.  The objection was sustained and the enhancement was removed from the presentence report.  (N.T. Sent. 4-5).

directed that those points be removed from the offense-level calculation.  (N.T.

Sent.7-8).  An offense level of 42 and a criminal history category of VI would have

resulted in a Guideline range of 360 months to life.  But because of the statutory

mandatory penalty under Section 841(b)(1)(A) and the Government's notice under

Section 851, a mandatory life term applied.  On May 21, 2009, the Court sentenced

Mr. Reaves to life followed, academically, by a 10-year-term of supervised release.

The Court noted that under Section 5G1.3(b) Mr. Reaves was entitled to an

adjustment from March 9, 2007, on an undischarged term of imprisonment in

Hudson County, New Jersey, but "because of the statutory mandatory term of life,

this adjustment has no impact on the sentence imposed."  (Doc. 357 at 2).

## III.   STATEMENT OF THE QUESTIONS INVOLVED

Section 404 of the First Step Act retroactively altered the sentencing scheme
under which the district court sentenced Mr. Reaves, reducing the statutory
punishment for those convicted of a covered offense involving crack cocaine.  The
questions presented are, thus:

A.   Whether Mr. Reaves is eligible for a reduction of Sentence under
Section 404 of the First Step Act when he was convicted of a crack
cocaine offense and sentenced to a mandatory life term that no longer
applies?

B.   Whether Mr. Reaves is entitled to a sentencing hearing to determine
the appropriate punishment when Section 404 contemplates such a
hearing, the Third Circuit has ordered hearings in similar cases, a
hearing is necessary for this Court effectively to address the statutory
sentencing factors, and when Mr. Reaves has the right to address the
Court?

## IV.   ARGUMENT

Since Mr. Reaves' sentencing in 2009, Congress passed the Fair Sentencing Act of 2010 ("FSA"), amending and eliminating the statutory scheme that mandated a life sentence.  And under Section 404 of the First Step Act, Congress made those amendments retroactive.  Mr. Reaves now faces a statutory range of 10 years to life, instead of a mandatory life sentence.

### A.   Mr. Reaves is eligible for relief under Section 404 of the First Step Act

When Mr. Reaves was sentenced, there were three tiers of penalties for offenders convicted of crack cocaine offenses under Section 841(a):

- Section 841(b)(1)(A)(iii) provided for a sentencing range of 10 years to life if the offense involved "50 grams or more" of crack;

- Section 841(b)(1)(B)(iii) provided for a sentencing range of 5 to 40 years if the offense involved "5 grams or more" but less than 50 grams of crack;

- Section 841(b)(1)(C) provided for a sentencing range of up to 20 years if the offense involved less than 5 grams or an unspecified amount of crack.

21 U.S.C. § 841(b) (before August 3, 2010).[3]  These penalties could be aggravated based on a defendant's prior convictions for felony drug offenses.  As formerly

---

[3] Because the statutory drug quantities are elements of the offense, they must be charged in the indictment and found by the jury beyond a reasonable doubt or admitted by the defendant at the guilty plea hearing. *See Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Alleyne v. United States*, 570 U.S. 99 (2013); *see also United States v. Powell*, ___ F. Supp. 3d ___, No. 5:02-CR-206, 2019 WL 1198005, at *4

applied to Mr. Reaves, two prior felony convictions mandated a life term.  *See* 21

U.S.C. § 841(b)(1)(A)(iii).

With the FSA, Congress ameliorated some of the crack cocaine penalties.  It

did so because empirical data had shown that the 1986 Anti-Drug Abuse Act's

penalty scheme for crack offenses was far too harsh and had a disparate impact on

African-American defendants.  *See Dorsey v. United* States, 567 U.S. 260, 268-69

(2012).  Specifically Section 2 of the FSA altered the penalty structure for crack

offenses:

- Section 841(b)(1)(A)(iii) now provides for a sentencing range of 10 years to life if the offense involved "280 grams or more" or crack;

- Section 841(b)(1)(B)(iii) now provides for a sentencing range of 5 to 40 years if the offense involved "28 grams or more" but less than 280 grams of crack; and

- Section 841(b)(1)(C) now provides for a sentencing range of up to 20 years if the offense involved less than 28 grams or an unspecified amount of crack.

21 U.S.C. § 841(b) (2018).

The FSA went into effect immediately, applying to any defendant sentenced

after the effective date, even if the offense was committed before that date.

*Dorsey*, 567 U.S. at 278; *United States v. Dixon*, 648 F.3d 195 (3d Cir. 2011).  Yet

---

(N.D.N.Y. Mar. 14, 2019) ("The drug type and quantity used to set the statutory range under the First Step Act of 2018 is the quantity charged in the indictment and found by a jury beyond a reasonable doubt").

the FSA left intact, however, unjust sentences imposed under the earlier penalty structure.  Mr. Reaves is serving one such sentence.

The First Step Act of 2018 created a freestanding remedy to reduce retroactively sentences—like the one Mr. Reaves is serving.  It authorizes courts to impose reduced sentences for any defendant who is still serving a sentence for a crack offense if that sentence was imposed when the pre-FSA penalty structure applied.  Section 404 establishes its remedy in three steps that apply to Mr. Reaves.

First, the Act defines what offenses are covered by its remedy:

> (a) Definition Of Covered Offense.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010.

Mr. Reaves' conviction under Section 841(a), prohibiting drug trafficking offenses involving crack cocaine, is a "covered offense."  That is so because Section 2 of the FSA "modified" the statutory penalties under Section 841(b) for violating subsection (a)—Mr. Reaves' sole count of conviction.  And he committed that violation before August 3, 2010.

Second, the FSA identifies the circumstances when a court can reduce the sentence for a defendant who was sentenced for a "covered offense":

> (b) Defendants Previously Sentenced.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the

7

> attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

This provision applies because the district court "imposed a sentence" on Mr. Reaves "for a covered offense," and he is moving for imposition of a reduced sentence. Thus, this Court can now "impose a reduced sentence" on Mr. Reaves for his crack conviction "as if" the FSA was in effect when he committed the covered offense.

Third, the Act provides narrow exceptions to a court's resentencing authority:

> (c) Limitations.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

These limitations do not apply here. The district court sentenced Mr. Reaves in 2009, before Section 2 of the FSA. And he has had no motion under Section 404 denied.

In sum, proving eligibility under the First Step Act is simple. A defendant is eligible if he was convicted of a crack offense, was sentenced when the pre-FSA

statutory penalties were still in effect, and continues to serve a sentenced that has

not already been reduced to post-FSA levels.  Because Mr. Reaves satisfies these

requirements, this Court has the authority to impose a reduced sentence.

**B.     As Mr. Reaves' mandatory life term is no longer applicable, he is entitled to a resentencing hearing.**

### 1.     Section 404 contemplates a resentencing hearing.

The plain language in Section 404 anticipates a resentencing hearing for

those, like Mr. Reaves, who are eligible.  That direction is reflected by Congress's

choice of the verb "impose"—instead of "modify" or "reduce"—in Section 404.

Sentencing statutes use the verb "impose" to mean "sentence" under the relevant

factors.  For example Section 3553(a) of Title 18 states "[t]he court shall *impose* a

sentence sufficient, but not greater than necessary, to comply with the purposes set

forth in paragraph (2) of this subsection."  Likewise, Section 3553(a)(2) directs

courts to consider "the need for the sentence *imposed*" because of the purposes of

sentencing.  And Section 3661 states "[n]o limitation may be placed on the

information concerning the background, character, and conduct of a person

convicted of an offense which a court of the United States may receive and

consider for the purpose of *imposing* an appropriate sentence."  And finally, the

Federal Rules of Criminal Procedure employ the same term.  *See* FED. R. CRIM. P.

32(i)(4)(A) ("[b]efore *imposing* sentence," the sentencing court must give defense

counsel, the defendant and Government counsel an opportunity to speak).

This language distinguishes Section 404 from the procedure governing

recent retroactive amendments to the Sentencing Guidelines.  Those changes were

promulgated by the Sentencing Commission and governed by Section 1B1.10 of

the Guidelines.  *See* U.S. SENTENCING GUIDELINES MANUAL § 1B1.10 (U.S.

SENTENCING COMM'N 2018) (addressing authority, limitations and exclusions)

("USSG").[4]  The Act, however, applies to pre-FSA crack defendants no matter

what provision set their guideline range and no matter if that range has been

changed.[5]  For many defendants—including Mr. Reaves—the changes in the

statutory penalty impact the Guideline range.  But any crack defendant sentenced

under Section 841(b)(1)(A), like Mr. Reaves, for a crack offense committed before

August 3, 2010, is eligible for imposition of a reduced sentence.  The Court may

"impose a reduced sentence" "as if" the FSA "were in effect" when the offense

was committed.  The Act places no other limit on how far the court may reduce a

---

[4] Applying the amendments involved abbreviated administrative-type proceedings for recalculating guidelines, substituting only the guideline amendment, not full resentencing hearings.  *See* USSG § 1B1.10(a)(3), (b)(1); *Dillon v. United States*, 560 U.S. 817 (2010).

[5] Before the enactment of the First Step Act, the Third Circuit recognized that requests for reductions of sentence under the FSA were not governed by 18 U.S.C. § 3582(c)(2).  *See United States v. Manuel*, 426 F. App'x 47, 49 (3d Cir. 2011) ("A claim seeking retroactive application of the Fair Sentencing Act may not be cognizable on a motion for a sentence reduction.  *See* 18 U.S.C. § 3582(c)(2) (authorizing certain reductions 'based on a sentencing range that has subsequently been lowered by the Sentencing Commission')").

sentence, and places no restriction on what a court may consider in exercising its discretion to impose a reduced sentence.

Moreover, unlike the statutory provisions addressing guideline amendments, *cf.* 18 U.S.C. § 3582(c)(1)(2), Section 404 includes no reference to the policy statements issued by the Sentencing Commission.  And Congress gave the Commission no power or authority to issue policy statements about what circumstances or by what amount a sentence may be reduced.  *Cf.* 28 U.S.C. § 994(t), (u).  Thus, at a resentencing under Section 404, this Court is limited only by the statutory-mandatory minimum term.

> **2.  In cases like Mr. Reaves', the Third Circuit and other courts have remanded for or held *de novo* resentencing hearings.**

The Third Circuit has remanded cases for resentencing when, as here, the penalty structure of the statute of conviction changed.  For instance, in cases on appeal when the Fair Sentencing Act was enacted, the Third Circuit remanded for resentencing hearings.  *See, e.g., United States v. Self*, 681 F.3d 190, 202-03 (3d Cir. 2012).  In *Self*, the FSA was enacted after the defendant was found guilty by a jury but before his sentencing.  At sentencing, he argued that the court should apply the FSA, which eliminated the mandatory minimum sentence.  The court rejected his argument and sentenced him to the pre-FSA mandatory minimum term.  On appeal, following its decision in *Dixon*, the Third Circuit agreed with the

Government's concession that the appropriate remedy was to vacate the
defendant's sentence "and remand the case for a *de novo* resentencing proceeding."
*Self*, 681 F.3d at 202-03; *accord United States v. Cruz*, 470 F. App'x 91, 94 (3d
Cir. 2012) (remanding so that the defendant "may be resentenced in accordance
with the FSA").

Indeed, the Third Circuit has reversed where the district court failed to
conduct a *de novo* resentencing under the FSA, instead relying on written post-
sentence rehabilitation submissions.  *See United States v. Walker*, 545 F. App'x
105, 106-07 (3d Cir. 2013) (non-precedential).  In *Walker*, notably, the
Government conceded that a *de novo* resentencing was required.  *See id*. at 107.

More recently, the Ninth Circuit remanded a case for a resentencing based
on Section 404 of the First Step Act.  *See United States v. Spearman*, 913 F.3d 958
(9th Cir. 2019) (retaining jurisdiction in a Section 2255 appeal, but remanding for
"re-sentencing in light of, and in accordance with the First Step Act of 2018").
And at least one district court addressing a motion under Section 404 has
conducted a resentencing hearing.  *See, e.g.*, *Powell*, No. 5:02-CR-206, 2019 WL
1198005, at *1 (considering a Section 404 motion, noting that the defendant was
present in the courtroom at the court's direction for "this important proceeding"
and "following oral argument by counsel, . . . Defendant Powell was provided an
opportunity to speak and then re-sentenced under the Fair Step Act of 2018").

For the same reasons, Mr. Reaves is entitled to a *de novo* resentencing.

> **3.    Because Mr. Reaves never had a sentencing when the court could consider an advisory guideline range and the factors under Section 3553(a), a *de novo* hearing is necessary.**

District courts are vested with the responsibility to exercise discretion in imposing sentence based on the particular circumstances of the offense and the defendant's personal history, given the factors set forth in Section 3553(a). *See, e.g.*, *United States v. Grier*, 475 F.3d 556, 570-72 (3d Cir. 2017). And Congress has directed that the courts consider, among other things, the history and characteristics of the defendant. *See* 18 U.S.C. § 3553(a)(1). This requires an assessment of the totality of the circumstances as they bear on the particular individual, with the view that each case is a unique study of human failings that may mitigate of magnify the crime and punishment. *See Gall v. United States*, 552 U.S. 38, 50-51 (2007). But that's not what occurred at Mr. Reaves' original sentencing. Then, the court considered only one thing—the mandatory life term. *See* (N.T. Sent. at 13-14).

The Court acknowledged that its "hands are tied at this point" and that "a conviction in this case under the law requires a mandatory sentence of life imprisonment, and the Court has no authority or ability to change that or modify it." (N.T. Sent. at 13). The Court received "affidavits of approximately 80 of Mr. Reaves' friends and family" and "letters from aunts, his grandmother, and  . . .

13

[his] father" and noted that it "read all those letters that you submitted." (N.T. Sent. 9). But the Court could not consider any of it in fashioning a sentence. The Court acknowledged Mr. Reaves' position, explaining "I just feel very bad for you. But, as I say, I have my duty to perform, and I don't have any choice in the matter." (N.T. Sent. at 14).

Now, there is no restriction on the factors a court may consider in imposing a reduced sentence. And the court must consider all relevant Section 3553(a) factors. *See, e.g., Pepper v. United States*, 562 U.S. 476, 490 (2011) (post-sentencing developments, whether favorable or unfavorable to the defendant, "bear directly on the District Court's overarching duty to 'impose a sentence sufficient, but not greater than necessary' to serve the purposes of sentencing."). In *Pepper*, the Court held that "courts post-*Booker* may consider evidence of a defendant's post-sentencing rehabilitation at resentencing and such evidence may, in appropriate cases, support a downward variance from the advisory Guideline range." *Id*. The Court found that there is no congressional policy to prohibit courts' consideration of post-sentencing developments in any context, including at resentencing after reversal on appeal, or "resentencings that occur for [other] reasons." "*e.g.,* when a sentence is set aside on collateral review." *Id*. at 499.

Mr. Reaves has considerable post-sentence rehabilitation evidence to present. *See, e.g.,* (Ex. "A" to Motion). Mr. Reaves has numerous certificates that

14

he has received and has more letters from family and friends.  And "family

members are often the best source of information regarding a defendant's personal

characteristics."  *United States v. Chapman*, 915 F.3d 139, 146 (3d Cir. 2019).  Mr.

Reaves intends to present information from family members and others who can

speak to his post-sentencing rehabilitation.  Because the court could not consider

the Section 3553(a) factors in fashioning a sentence at the original proceeding, and

because the original sentencing judge, the Honorable William W. Caldwell, has

since retired, a *de novo* sentencing is necessary.

> ### 4.     A sentencing hearing is also necessary so that Mr. Reaves can exercise his right to allocution.

Mr. Reaves has a right to speak and present any information to mitigate the

sentence.  *See* FED. R. CRIM. P. 32(i)(4)(A)(ii).  This right is deeply rooted in the

common law, predating the founding of the United States.  *See United Sates v.

Ward*, 732 F.3d 175, 180-81 (3d Cir. 2013).  The rationale for the right is that

"[t]he most persuasive counsel may not be able to speak for a defendant as the

defendant might, with halting eloquence, speak for himself."  *Green v. United

States*, 365 U.S. 301, 304 (1961).

Consistent with a sentencing court's obligations under Section 3553(a),

allocution serves three critical purposes.  First, it allows a defendant to present

mitigating circumstances.  *See Ward*, 732 F.3d at 181.  Second, it permits a

defendant to present his personal circumstances and thus allows the court to

impose an individualized sentence.  *See id*.  And finally, it preserves fairness and equity in the criminal justice system.  *See id*.[6]

Although Mr. Reaves' had an opportunity to address the Court at his original sentencing, the mandatory life sentence rendered the right to allocution meaningless.  But now, Mr. Reaves could address how he has changed as a person over the past 10 years since his sentencing.

---

[6] *Accord Chapman*, 915 F.3d at 146; *United States v. Faulks*, 201 F.3d 208 (3d Cir. 2000) (directing defendant's presence at a resentencing given that there are still significant discretionary elements in the decision).

## V.   Conclusion

For all of these reasons, Mr. Reaves has a right to address personally and present testimony to inform this Court's exercise of sentencing discretion.  And before sentencing, Mr. Reaves will file a detailed sentencing memorandum in support of his request for a variance.  If, however, this Court is inclined to deny the motion for a resentencing hearing, Mr. Reaves requests the opportunity to file a memorandum and supplemental documentation to support a variance.

Date: April 5, 2019                                  Respectfully submitted,

*/s/ Frederick W. Ulrich*
FREDERICK W. ULRICH, ESQUIRE
Asst. Federal Public Defender
Attorney ID# PA44208
Tammy L. Taylor, Esquire
Staff Attorney
Attorney ID# PA73155

100 Chestnut Street, Suite 306
Harrisburg, PA 17101
Tel. No. 717-782-2237
Fax No. 717-782-3881
*Fritz_ulrich@fd.org*
*Tammy_taylor@fd.org*
*Attorneys for Ollie Reaves*

## CERTIFICATION OF WORD COUNT UNDER
## MIDDLE DISTRICT LOCAL RULE 7.8(b)

I, Frederick W. Ulrich, Esquire, Assistant Federal Public Defender, certify

that the body of the brief contains 3,587 words;

I make this certification under penalty of perjury, pursuant to 28 U.S.C.

§1746.


Date:  April 5, 2019                  */s/ Frederick W. Ulrich*
                                      FREDERICK W. ULRICH, ESQ.
                                      Asst. Federal Public Defender

<u>CERTIFICATE OF SERVICE</u>

I, Frederick W. Ulrich, Esquire, of the Federal Public Defender's Office, certify that I on this date a copy of the **Brief in Support of Motion for a Resentencing Hearing and Imposition of a Reduced Sentence Under Section 404 of the First Step Act**, by Electronic Case Filing and/or placing a copy in the United States mail, first class in Harrisburg, Pennsylvania addressed to:

Eric Pfisterer, Esquire
Assistant United States Attorney

Joseph J. Terz, Esquire
Assistant United States Attorney

Ollie Reaves


Date:  April 3, 2019                    */s/ Frederick W. Ulrich*
                                        FREDERICK W. ULRICH, ESQ.
                                        Asst. Federal Public Defender